CBS CATALOGUE
PARTNERSHIP, Plaintiff,

v.

CBS/FOX COMPANY, Defendant,

v.

MGM ENTERTAINMENT CO. and
United Artists Corporation,
Third-Party Defendants.

No. 86 Civ. 1149 (PKL).

United States District Court,
S.D. New York.

Aug. 27, 1987.

Warshaw Burstein Cohen Schlesinger & Kuh, New York City (Richard H. Kuh, of counsel), for plaintiff.

Simpson Thacher & Bartlett, New York City (Roy L. Reardon, of counsel), for defendant.

Townley & Updike, New York City (Lawrence C. Fox, of counsel), for third-party defendants.

OPINION & ORDER

LEISURE, District Judge:

Third-party defendants have moved to dismiss the Amended Complaint and the third-party indemnification action pursuant to Fed.R.Civ.P. 12(b)(1) and 14(a) for lack of jurisdiction over the subject matter.[1] Plaintiff and defendant oppose the motion. Third-party defendants previously moved to dismiss the Complaint on the same grounds. By stipulation between the parties dated February 24, 1987, and so ordered by the Court, plaintiff received leave to file the Amended Complaint. Subsequently, third-party defendants renewed their motion to dismiss.

*Factual Background*

In its first claim, the Amended Complaint makes the following factual allegations:

Through an agreement dated December 15, 1982, CBS Inc. ("CBS") purchased from United Artists Corporation ("UA") and MGM/UA Entertainment Co. ("MGM") all of UA's and MGM's music publishing assets, including all right, title and interest in, and the copyrights to, certain musical compositions (the "Compositions"). UA and MGM are the third-party defendants herein.

On September 23, 1983, CBS assigned the aforesaid assets to plaintiff, CBS Catalogue Partnership ("Catalogue"). Accordingly, plaintiff is the sole proprietor of all right, title and interest in and to the copyrights to the Compositions. The assignment of the aforesaid assets included the assignment of all existing causes of action relating to the Compositions.

Beginning on December 15, 1982, and continuing to the present, defendant CBS/Fox Company ("CBS/Fox") has deliberately infringed the copyrights to the Compositions by manufacturing and distributing certain home video products embodying the Compositions (the "Videograms"). Plaintiff has previously notified defendant of the infringement of its copyrights, but defendant has not entered into a

---

1. "The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." Fed.R. Civ.P. 14(a).

license and has refused to cease and desist from further infringement. Plaintiff seeks an injunction and damages.

In the second claim of the Amended Complaint, plaintiff seeks an accounting of defendant's profits derived from the Videograms since December 15, 1982.

In its third claim, the Amended Complaint makes the following additional allegations:

In May of 1983, CBS scheduled a meeting with CBS/Fox to discuss defendant's infringement of the Compositions. At a meeting on or about May 24, 1983, CBS and defendant entered into an agreement (the "Royalty Agreement") whereby CBS/Fox agreed to pay the equivalent of mechanical copyright royalty payments on account of its manufacture and distribution of the infringing Videograms if CBS met certain conditions. These conditions included CBS's success in negotiating royalties arrangements with other major home video distributors. CBS agreed neither to seek such payments from defendant nor to commence an infringement action until consummation of negotiations with other major distributors.

On September 23, 1983, the Royalty Agreement was duly transferred and assigned to plaintiff. Plaintiff has duly performed all parts of the Royalty Agreement on its part to be performed. In reliance on defendant's representation that it would pay the equivalent of industry or negotiated royalty rates for its past infringement of the Compositions, plaintiff forebore from suit.

On or about June 4, 1984, plaintiff requested that defendant schedule a meeting to discuss entering into a license agreement. On or about August 16, 1984, plaintiff informed defendant that plaintiff was close to completing negotiations with other major distributors and requested that CBS/Fox commence negotiations with respect to its liability for past infringement. Defendant, however, refused to pay royalties on account of its past infringement or to enter into a license agreement.

At no time before or after May 24, 1983, did CBS or plaintiff authorize defendant to distribute the Videograms. Plaintiff seeks damages on its third claim.

## Discussion

MGM and UA have advanced two grounds for dismissal under Rule 12(b)(1). *See* Supplemental Reply Memorandum at 10. The first, and narrower of the two, "is that there is no copyright jurisdiction if contract allegations defeat the copyright claim on the face of the complaint." *Id.* (citing *Bear Creek Productions Inc. v. Saleh*, 643 F.Supp. 489, 1985–86 Copyright L. Dec. (CCH) ¶ 26,000 at 20,596 (S.D.N.Y. 1986); *Arvin Industries, Inc. v. Berns Air King Corp.*, 510 F.2d 1070, 1073 (7th Cir. 1975)). The second is that "there is no copyright jurisdiction if the outcome of copyright claims is wholly contingent upon resolution of contractual issues." *Id.* at 11.

### A. Copyright Claim Not Defeated

Third-party defendants argue that the Amended Complaint must be dismissed because of what they perceive as a "basic conflict" between plaintiff's breach of contract claim and its infringement claim. Supplemental Memorandum at 3. MGM and UA essentially urge the Court to ignore certain of the allegations in the Amended Complaint because, according to third-party defendants, they are inconsistent with other allegations contained therein. Despite the fact that Catalogue's amended allegations are to the contrary, MGM and UA continue to assert that the alleged agreement creates "the unmistakable implication that CBS authorized CBS/Fox to distribute the allegedly infringing videograms...." *Id.* They argue that because CBS/Fox allegedly agreed it would provide certain payments and enter into a license agreement if certain conditions were met, then it must also be true that Catalogue authorized CBS/Fox to distribute the Videograms pursuant to the Royalty Agreement at all times and relinquished any right plaintiff otherwise had to sue for copyright infringement. In fact, however, the Amended Complaint clearly alleges that the subject of the Royalty Agreement was pre-existing infringement, and therefore no inference of authorized

future use arises. The Amended Complaint is also clear that, at least after plaintiff consummated negotiations with other major distributors, defendant allegedly had no contractual right to continue to manufacture and distribute the Videograms without entering into a license agreement.

MGM and UA have conceded as much. *See* Supplemental Reply Memorandum at 4 (Plaintiff has "recast the May 1983 [Royalty A]greement so as to limit its scope to prior videogram distribution....."). Yet, third-party defendants contend that the allegations of the Amended Complaint "should not be accorded the deference to which pleadings are ordinarily entitled on a motion to dismiss" because they "contradict [plaintiff's] previous sworn allegations, are contrary to reason and were obviously contrived to address" the instant motion. *Id.* at 2, 5. In support, MGM and UA cite such cases as *Reisner v. General Motors Corp.*, 511 F.Supp. 1167, 1172 & n. 10 (S.D. N.Y.1981), *aff'd*, 671 F.2d 91 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982), in which the Court denied *leave to amend*, in part because the proposed new factual allegations were inconsistent with previous allegations and raised "a substantial doubt as to the good faith of plaintiffs' counsel in asserting them." [2] In this case, however, MGM and UA, having read the proposed Amended Complaint, stipulated to its filing. The Court sees no reason to depart from the rule that "an amended complaint ordinarily supercedes the original pleading....." *Gilmore v. Shearson/American Express Inc.*, 811 F.2d 108, 112 (2d Cir.1987) (citing *International Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978)).

In sum, third-party defendants' first argument must be rejected because unlike the plaintiff in *Bear Creek*, Catalogue has not sued "for a violation of its rights under federal copyright law which its own complaint shows did not occur." *Bear Creek*, 643 F.Supp. 489, ¶ 26,000 at 20,596.

## B. Contract Claim Not Wholly Contingent

Relying on *Berger v. Simon & Schuster*, 631 F.Supp. 915 (S.D.N.Y.1986), third-party defendants assert that this case does not arise under the federal copyright laws because "the only issues to be resolved are wholly contractual in nature." Supplemental Reply at 11. *See* 28 U.S.C. § 1338(a). In fact, however, Judge Sand's analysis in *Berger* supports plaintiff's position.

In *Berger*, plaintiff framed his complaint "entirely in terms of infringement" and "pretended[ed] in his complaint to ignore what [was] at the heart of the controversy." 631 F.Supp. at 917, 919. Judge Sand found that "in substance," plaintiff was "seeking a declaration that certain conditions precedent to a revo[c]ation of a license have taken place." *Id.* at 917. On the basis of this conclusion, he applied the rule that " 'federal jurisdiction is held to exist if the plaintiff has directed his pleading against the offending use, referring to the license only by way of anticipatory replication, but not if he has sued to set the license aside, seeking recovery for unauthorized use only incidentally or not at all.' " *Id.* at 918 (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 825 (2d Cir.1964) (Friendly, J.), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)).

In this case, plaintiff is seeking declaratory relief in neither form nor substance. Moreover, Catalogue is not seeking to set a license aside; on the contrary, it affirmatively alleges that no such license or other authorization ever existed.[3] Unlike the plaintiff in *Berger*, Catalogue does not pretend that the contract issues are non-exis-

---

**2.** The Court entertains no such doubts as to the motives of counsel for plaintiff. In their original reply memorandum, MGM and UA suggested that Catalogue might be able to "amend its third cause of action in such a way as to obviate [the] motion," and after discussion between the parties and the Court, Catalogue attempted to do so. *See* Reply Memorandum at 17.

**3.** As previously discussed, the Amended Complaint alleges that the payments owed by defendant were owed, not under a license, but under an agreement to pay plaintiff a royalty equivalent in settlement of a claim for pre-existing infringement.

tent. Yet it is clear that the heart of this controversy is plaintiff's claim for recovery for unauthorized use.

Far from resembling *Berger,* this case presents factual allegations much closer to the situation in *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 230 (2d Cir.1982). In that case, Kamakazi sued Robbins for publishing certain works "after the contract between the two had expired." *Id.* The Court concluded that "[o]nce the contract had expired, Robbins was liable for infringement of Kamakazi's copyrights." *Id.* Moreover, the Court stated that "[g]iven the explicit language of Kamakazi's complaint, and the acts complained of, it is frivolous" for Robbins to argue that "its interpretation of the contract" converts Kamakazi's suit to one for breach of contract. *Id.* at 229, 230. Rather, "Kamakazi's suit is, was, and always has been based on the Copyright Act." *Id.* at 230. Similarly, the Amended Complaint in this case sets forth a breached agreement to pay for past infringement, and alleges continuing infringement thereafter. *See also RX Data Corp. v. Department of Social Services,* 684 F.2d 192, 196 (2d Cir. 1982) (suit for infringement remedy); *Frankel v. Stein and Day,* 470 F.Supp. 209, 212 (S.D.N.Y.1979), *aff'd,* 646 F.2d 560 (2d Cir.1980) (sustaining jurisdiction where infringement present on undisputed facts).

"In considering the plea of lack of jurisdiction, the formal allegations of the complaint must yield to the substance of the claim." *Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32, 33 (S.D.N.Y. 1977). "[T]he Court must look to the essence of plaintiff's claim." *Keith v. Scruggs,* 507 F.Supp. 968, 970 (S.D.N.Y. 1981). In this case, plaintiff's complaint, formally and functionally, "is for a remedy expressly granted by the [Copyright] Act, [*i.e.*] a suit for infringement...." *See Eliscu,* 339 F.2d at 828. *See also id.* at 825, 826.[4] Thus, plaintiff's claim "arises under"

the Copyright Act within the meaning of 28 U.S.C. § 1338(a).

Accordingly, third-party defendants' motion to dismiss is hereby denied in all respects.

SO ORDERED.

---

4. Judge Friendly stated that "the undoubted truth that a claim for infringement 'arises under' the Copyright Act" is explained by the rule formulated by Justice Holmes that " '[a] suit arises under the law that creates the cause of

action.'" 339 F.2d at 825, 826 (quoting *American Well Works Co. v. Layne and Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916)).